**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BRIANNA O., and     )
ANNE O., Individually and   )
as Parent and Next Friend of BRIANNA O., )
             )
    Plaintiffs,    )
             )  Case No.  10 C 2132
    v.       )
             )
BOARD OF EDUCATION OF THE  )
CITY OF CHICAGO, DISTRICT 299,  )
             )
    Defendant.   )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 7, 2010, Plaintiffs Brianna O., a minor, and Anne O., individually and as parent and next friend of Brianna ("Plaintiffs"), filed the present lawsuit against Defendant Board of Education of the City of Chicago, District 299 (the "District") for attorney's fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1415(i)(3)(B). Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part both the District's and Plaintiffs' motions for summary judgment. The Court, in its discretion, awards Plaintiffs $31,491.60 in attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B), plus 3.25% prejudgment interest, and dismisses this lawsuit in its entirety.

## BACKGROUND

### I.  Factual Background

Brianna suffers from attention deficit hyperactivity disorder. (R. 23, Pls.' Rule 56.1 Stmt. Facts, ¶ 6.) She has received special education services since Kindergarten, and in

accordance with the Individuals with Disabilities Education Act, *see* 34 C.F.R. § 300.301, Brianna receives an individualized education program ("IEP") to help her reach academic standards. (*Id*. at ¶ 5.) Her school district of residence is Chicago Public School ("CPS") District No. 299. (*Id*.) At the time of the due process hearing at issue in this lawsuit, Brianna was 9 years old and preparing to enter the 4th Grade. (*Id*.)

In 2007-2008, when Brianna was in 2nd Grade, her teacher reported that she was having difficulty staying on task, and that she seemed to lack confidence in trying new tasks, particularly in math. (*Id*. at ¶ 8.) The teacher made adjustments designed to address Brianna's learning difficulties, but Brianna continued to struggle. (*Id*. at ¶¶ 8, 9.) In January 2008, the team of professionals who created and monitored her IEP (the "IEP team") agreed to provide Brianna 150 minutes per week ("mpw") of additional math support with a special education teacher. (*Id*. at ¶ 8.) As a result of this additional support, Brianna's math grades, and her confidence in the classroom, improved. (*Id*.; R. 23-1, Ex. A - Illinois State Board of Education Decision & Order ("ISBE Order") at A-3; R. 18, Def.'s Rule 56.1 Stmt. Facts, Ex. A - ISBE Order at A-3.)

When Brianna entered 3rd Grade in the Fall of 2008, the IEP team eliminated the 150 mpw of additional math support from her IEP. (Pls.' Stmt. Facts, ¶ 10.) Brianna's mother requested an IEP meeting to consider reinstating the additional 150 mpw of support. (*Id*. at ¶ 11.) On September 24, 2008, following a meeting with Brianna's mother, her teacher, her case manager, and a special education teacher,[1] the IEP team declined to reinstate the additional

---

[1] The ISBE Order's Findings of Fact note that the September 24, 2008 meeting was not technically an IEP meeting. (ISBE Order at A-4.)

services.  (*Id.*)  Brianna's mother continued to seek reinstatement of the additional support, and on October 27, 2008, another meeting took place.[2]  (ISBE Order at A-5.)  At that meeting, the IEP team agreed that they would observe Brianna, gather additional data regarding her needs, and reconvene on November 6, 2008 to discuss the next steps.  (*Id.*)

The November 6 IEP meeting occurred as-scheduled, and once again the IEP team declined to reinstate the 150 mpw of additional services for Brianna.  (Pls.' Stmt. Facts, ¶ 12.) Brianna's mother and teacher both filed written dissents, arguing that Brianna needed additional math support services.  (*Id.*; ISBE Order at A-6.)  Based on their written dissents, a subsequent IEP meeting took place on November 21, 2008.  (Pls.' Stmt. Facts, ¶ 14.)  At that meeting, the IEP team created an "interim" IEP that provided Brianna with 150 mpw of additional math support with a special education teacher.  (ISBE Order at A-7.)  The IEP team agreed to meet again on December 17, 2008 to assess Brianna's progress.  (*Id.*)

The December 17 IEP meeting did not take place.  (*Id.*)  By that time, as discussed further below, Brianna's mother had filed a formal due process complaint with the Illinois State Board of Education ("ISBE").  (Pls.' Stmt. Facts, ¶ 13.)  Despite her mother's repeated requests, the District never convened another IEP meeting regarding Brianna's education.  (ISBE Order at A-8.)

Although the District failed to convene any further IEP meetings, Brianna's school continued to provide Brianna with 150 mpw of additional math support for the remainder of her 3rd Grade year.  (*Id.*)

---

[2]  The ISBE Order's Findings of Fact clarify that although the IEP team met at the October 27 meeting, it was a "student planning conference" and not an IEP meeting.  (ISBE Order at A-5.)

### A. Plaintiffs' New Requests at the November 21, 2008 IEP Meeting

In addition to asking for 150 mpw of math support at the November 21 IEP meeting, Brianna's mother raised several other, non-math related requests for the first time. (Pls.' Stmt. Facts, ¶ 15; ISBE Order at A-7.) Specifically, she asked the District to: (1) refer Brianna for an assistive technology ("AT") evaluation; (2) administer specific tests to determine whether Brianna had a non-verbal learning disability; and (3) provide Brianna with 200 mpw of special education instruction in writing. (*Id.*) The IEP team agreed to the first request, presented a compromise offer on the second request, and denied the third request. (ISBE Order at A-7.) On November 24, Brianna's mother submitted a letter of dissent with regard to the District's denials. (*Id.*)

### B. Pre-Hearing Events

Brianna's mother retained attorney Nelly Aguilar ("Ms. Aguilar") on January 2, 2009, to represent her and her daughter in the due process hearing she had requested. (Pls.' Stmt. Facts, ¶ 16.) Nine days later, on January 11th, her mother also retained Mauk & O'Connor LLP to assist in the representation. (*Id.* at ¶ 17.)

ISBE did not convene the due process hearing until August 3, 2009. (*Id.* at ¶ 18.) In the interim, several things occurred. First, the parties participated in an unsuccessful resolution conference on January 27, 2009. (ISBE Order at A-15.) Second, following that conference, Plaintiffs asked the District to provide an independent educational evaluation ("IEE") for Brianna. (*Id.* at A-8.) The District denied Plaintiffs' request, and as a result, Plaintiffs retained: two psychologists, Dr. Hoeppner and Dr. Raviv, to assess Brianna's cognitive skills; Dr. Marsden-Johnson, to conduct an assistive technology ("AT") evaluation of Brianna to determine

whether AT products might help Brianna improve her writing skills; and Dr. Gouze, a licensed clinical psychologist, to assess behavioral concerns Brianna's mother was having about her daughter. (*Id*. at A-8, A-9.) Third, Brianna's mother – herself and through her counsel – continued to ask the District to hold an IEP meeting. (*Id*. at A-15.) Those requests appear to have gone unanswered. (*Id*.)

### C. The District's July 23, 2009 Offer of Settlement

On July 23, 2009, the District presented Plaintiffs with an Offer of Settlement (the "Offer"). The District offered the following:

1. To convene an IEP revision meeting in order to make the following changes to Brianna's IEP:

    a. Provide 200 mpw special education instruction in mathematics in the regular education classroom setting, and not less than 40 mpw special education instruction in mathematics in a separate classroom;

    b. Review and consider Plaintiffs' consultants' evaluations, and adopt any recommendations the IEP team deems appropriate and necessary to meet Brianna's educational needs;

    c. Provide AT training to Brianna's mother and teachers regarding any of Dr. Marsden-Johnson's recommendations that the IEP team adopts;

    d. Revise the IEP to include a goal to address Brianna's organizational needs; and

    e. Consider and incorporate any of the consultants' recommended visual accommodations and modifications that the IEP team finds appropriate to meet Brianna's educational needs.

2. To reimburse Plaintiffs up to $300.00 for expenses relating to Dr. Marsden-Johnson's AT evaluation.

3. As compensatory services, to provide ten (10) sixty-minute, one-on-one tutoring sessions to Brianna outside the regular school day, to be conducted by a certified teacher.

(Pls.' Stmt. Facts, ¶ 24; R. 18-4, Def.'s Stmt. Facts, Ex. D.) Plaintiffs rejected the Offer on July

26, 2009.  (Pls.' Stmt. Facts, ¶ 24; R. 18-5, Def.'s Stmt. Facts, Ex. E.)

**D.     The Due Process Hearing: August 3-5, 2009**

An ISBE hearing officer convened the due process hearing on August 3-5, 2009.  (Pls.'

Stmt. Facts, ¶ 18.)  At the hearing, Plaintiffs alleged that between April 2007 and August 2009,

the District violated Brianna's right to a free and appropriate public education ("FAPE").

Specifically, Plaintiffs complained that the District:

1.     Did not appropriately evaluate Brianna for a potential learning disability.

2.     Denied Brianna's mother access to Brianna's IEP and failed to give her a copy of the IEP document when she visited Brianna's school on November 6 and 10, 2008.

3.     Denied Brianna's mother access to Brianna's records on November 10, 2008.

4.     Did not provide Brianna's mother with a conference notification for the September 24, 2008 meeting.

5.     Violated Brianna's mother's rights at the IEP meeting.

6.     Failed to provide Brianna with appropriate services due to inadequate prior evaluations.

7.     Failed to provide an AT evaluation in a timely fashion, and failed to provide and services that addressed all of Brianna's needs.

(Pls.' Stmt. Facts, ¶ 19; ISBE Order at A-1, A-2.)  Plaintiffs requested the following relief:

1.     Reimbursement for the costs Plaintiffs incurred to privately engage Drs. Hoeppner, Raviv, and Marsden-Johnson.

2.     A determination that the District violated Brianna's right to a FAPE because: (i) its IEP meetings failed to follow proper procedure; (ii) it impeded her mother's ability to participate; and (iii) it failed to offer appropriate IEPs for Brianna.

3.     A determination that all of the District's IEPs were inappropriate, and an order that the District convene an IEP meeting to implement the consultants' findings and recommendations into a revised IEP that included, but was not limited to:

a. 200 minutes per week ("mpw") of math instruction in the general education room with a special education teacher and 200 mpw in a resource room (one-on-one or in a distraction-free area);

b. a multi sensory math program;

c. visual accommodations/modifications;

d. eligibility for math learning disability; and

e. organization goals, in accordance with the consultants' evaluations.

4. 30 mpw of AT support for Brianna, with additional time to train Brianna's mother and teachers.

5. Compensatory services in the form of forty (40) sixty-minute, one-on-one math tutoring sessions beyond the school day with a certified special education teacher.

(Pls.' Stmt. Facts, ¶ 20; ISBE Order at A-2.)

**E. The ISBE Decision & Order**

The ISBE issued a Decision & Order (the "Order") on August 26, 2009. (Pls.' Stmt. Facts, ¶ 21.) The hearing officer's conclusions of law overwhelmingly rejected Plaintiffs' due process violation charges, as follows:

1. Contrary to Plaintiffs' allegations, the District appropriately evaluated Brianna for a learning disability.

2. The District's failure to provide Brianna's mother with a completed copy of the IEP on November 6 and 10, 2008 were technical procedural violations that did not amount to a denial of FAPE. She received the IEP by November 14.

3. The District's refusal to provide Brianna's mother with access to Brianna's records on November 10, 2008 did not amount to a denial of FAPE. She received the records by November 14.

4. The District's failure to send a conference notification for the September 24, 2008 meeting was not a denial of FAPE. Brianna's mother requested the meeting, was aware of the meeting date, and attended the meeting.

5. The District did not violate Brianna's mother's rights at the November 6, 2008

IEP meeting.

6.    Other than the AT assessment, the District appropriately evaluated Brianna and
provided her with appropriate educational services.

*See* ISBE Order at A-15, A-17.  The hearing officer did agree with Plaintiffs on one allegation,

namely, that the District failed to timely provide an AT evaluation and the AT services necessary

to meet Brianna's educational needs.  *Id*.  In addition, *sua sponte*, the hearing officer determined

that the District violated Brianna's right to a FAPE by failing to respond to her mother's requests

to convene an IEP meeting after she had filed the due process complaint.  *Id*.

In accordance with the conclusions of law, the hearing officer denied the majority of

Plaintiffs' requests for relief.[3]  Nevertheless, Plaintiffs prevailed in three regards.

First, the hearing officer ordered the District to convene an IEP meeting within two

weeks of the Order, and to revise Brianna's IEP to both (i) include appropriate AT services, and

(ii) take into account the findings and recommendations of Plaintiffs' privately-engaged

consultants.  *See* ISBE Order at A-17, A-18.  In conjunction with that relief, the hearing officer

ordered the District to provide Brianna with a minimum of 20 mpw of AT support to help her

become proficient at using AT devices and programs, and to provide additional training for her

mother and staff ("at least Brianna's regular classroom and special education teacher").  *Id*.

---

[3] The hearing officer denied Plaintiffs' requests for: (i) reimbursement of costs related to
Dr. Hoeppner and Dr. Raviv's evaluations; (ii) an order that all IEP meetings failed to follow
proper procedure and thus denied FAPE; (iii) an order that all IEPs were inappropriate and thus
denied FAPE; (iv) an order requiring the District to convene an IEP meeting to implement the
findings of their privately-engaged consultants' evaluations; (v) an additional 400 mpw of math
support services for Brianna in and out of the classroom; and (vi) compensatory services in the
form of one-on-one math tutoring.  *Id*.

8

Second, as mentioned above, the hearing officer determined *sua sponte* that the District's failure to respond to Brianna's mother after she filed the due process complaint violated Brianna's right to a FAPE.  For this violation, the hearing officer awarded Plaintiffs, as compensatory services, permission to invite two of their privately-engaged consultants to attend the IEP meeting (with their time compensated by the District), where they would be allowed to present their reports to the IEP team and assist in creating appropriate goals and objectives for Brianna.  *Id.*

Third, the hearing officer ordered the District to allow (and pay for) Dr. Marsden-Johnson to conduct a classroom observation of Brianna after the District finished implementing AT services into Brianna's curriculum.  The hearing officer ordered the District to provide proof of compliance with the Order within thirty days.  *Id.*

## II.     Plaintiffs' Claim for Attorneys' Fees

On February 22, 2010, Plaintiffs' counsel submitted an interim claim for $56,277.66 in attorneys' fees and costs to the District.  (Pls.' Stmt. Facts, ¶ 25; *see also* R. 23-1, Ex. B - Attorneys' Fees Letter.)  The law firm of Mauk & O'Connor billed $37,518.66, and co-counsel, Ms. Aguilar, billed $18,759.00.  (Attorneys' Fees Letter at B-2.)  Mauk & O'Connor and Ms. Aguilar each enclosed an itemized billing sheet with the interim claim submission.  In addition to the fees incurred leading up to and through the due process hearing, they included fees incurred for monitoring compliance with and enforcement of the Order, and attending the IEP meeting convened pursuant to the Order.  (Pls.' Stmt. Facts, ¶ 29.)

Plaintiffs filed the underlying lawsuit in this Court on April 7, 2010 to obtain their requested fees, plus prejudgment interest and fees for prosecution of this case.  Before the Court

are the parties' cross motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

These "principles apply to cross-motions for summary judgment just as they would to a garden-variety summary judgment motion." *Steinberg v. Railroad Maint. & Indus. Health & Welfare Fund*, No. 03 C 4539, 2004 WL 1151619, at *2 (N.D. Ill. Apr. 13, 2004) (citing *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). That is to say, "the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." *Crespo v. Unum Life*

10

*Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003).  Because "each motion must be

assessed independently [ ] denial of one does not necessitate the grant of the other."  *Local 710

I.B.T. Pension Fund v. United Parcel Serv., Inc.*, No. 02 C 4420, 2004 WL 2403123, at *3 (N.D.

Ill. Oct. 26, 2004) (citations omitted).  With these standards in mind, the Court turns to the merits

of the parties' motions.

## ANALYSIS

Both parties move for summary judgment on the issue of attorney's fees.  The IDEA

states that "[i]n any action or proceeding brought under this section, the court, in its discretion,

may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the

parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B); *see also Schaffer v. Weast*, 546

U.S. 49, 54, 126 S. Ct. 528, 532-33, 163 L. Ed. 2d 387 (2005) ("Prevailing parents may . . .

recover attorney's fees."); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir.

2003) ("the IDEA does allow fees to the prevailing party in administrative hearings").  Courts

apply the same principles governing attorney's fees awards in civil rights cases under 42 U.S.C.

§ 1988 to cases under the IDEA.  *See Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*,

109 F.3d 1250, 1253 n.2 (7th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7, 103

S.Ct. 1933, 76 L.Ed.2d 40 (1983)).  When determining whether attorney's fees are reasonable,

courts consider the lodestar figure, namely, "the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate."  *Enoch v. Tienor,* 570 F.3d 821, 823 (7th Cir.

2009) (quoting *Hensley*, 461 U.S. at 433).  As the Seventh Circuit instructs, the "lodestar figure

is the 'starting point'" and "[o]nce that figure is determined, the court may consider other factors

set out in *Hensley*," which "include whether the documentation of the hours is adequate and

whether 'billing judgment' was used." *Enoch,* 570 F.3d at 823-34.  The party seeking attorney's fees has the burden of proving the reasonableness of both the hourly rates and the amount of hours expended.  *See Hensley,* 461 U.S. at 437.

## I.    Prevailing Party

Plaintiffs cannot recover attorney's fees pursuant to Section 1415(i)(3)(B) unless they are the prevailing party.  "[A] plaintiff may be considered a 'prevailing party' if 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *T.D.*, 349 F.3d at 479 (citing *Hensley*, 461 U.S. at 433 (internal quotations omitted)).  "A prevailing party, to be classified as such, therefore 'must obtain at least some relief on the merits of his claim.'" *Jodlowski*, 109 F.3d at 1253 (citing *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992)).  Furthermore, a party prevails when she obtains actual relief on the merits of a claim that materially alters the legal relationship between the parties by modifying the defendant's behavior to benefit the plaintiff.  *See Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (citing *Farrar*, 506 U.S. at 111-12).  Whether a party has prevailed does not depend on the magnitude of the relief obtained.  *Linda T.*, 417 F.3d at 708; *Koswenda v. Flossmoor Sch. Dist. No. 161*, 227 F. Supp. 2d 979, 987 (N.D. Ill. 2002) (internal citations omitted).  A party may be considered "prevailing" even if she does not prevail on all issues (or even the central issue) in the litigation.  *See id*.

Here, the District argues that Plaintiffs do not qualify as a prevailing party under the IDEA because the relief they received was "*de minimus*."  (R. 17, Def.'s Mem. in Support of Mot. for Summ. J. at 4.)  Plaintiffs acknowledge that they did not obtain all of the relief they requested at the due process hearing, but contend that the relief they did obtain qualifies them as

the prevailing party. Although the hearing officer denied much of Plaintiffs' requested relief, the hearing officer ruled that the District violated Brianna's right to a FAPE, and ordered the District to convene an IEP meeting to revise her IEP to take into account the findings and recommendations of Plaintiffs' private-engaged consultants. The hearing officer also granted Plaintiffs' request to provide Brianna 20 mpw of AT support and training, and ordered the District to provide AT training to Brianna's mother and staff at school. The Court finds that the substantive relief Plaintiffs obtained sufficiently establishes that they are the prevailing party. *See*, *e.g.*, *T.D.*, 349 F.3d at 479-480 (finding that T.D. was the prevailing party where "T.D. did not succeed on every issue at the due process hearing, [but] he did prevail on certain significant issues and achieved at least some of the benefit he sought" in bringing suit); *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 908 (7th Cir. 1996) (even minimal relief obtained at the due process hearing supported a prevailing party determination).

## II. The District's Offer of Settlement

In the alternative, the District argues that Plaintiffs cannot recover any attorneys' fees incurred after July 23, 2009 because they rejected the District's Offer of Settlement (tendered on that date) and, the District alleges, the Offer provided more favorable relief than the ISBE Order. Section 1415(i)(3)(D) of the IDEA prohibits the award of attorney's fees and related costs for services performed after receipt of a written offer if: (1) the offer is made more than ten days before the start of the administrative proceeding; (2) the offer is not accepted within ten days; and (3) "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i). There is one exception to this prohibition: "an award of attorneys' fees and

related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer."  20 U.S.C. § 1415(i)(3)(E).

The parties agree that the District tendered the settlement offer to Plaintiffs on July 23, 2009, more than ten days before the due process hearing began.  The parties further agree that Plaintiffs rejected the Offer on July 26, 2009.  The issue, therefore, is whether the relief the hearing officer awarded was "not more favorable" than the District's settlement offer, and, if it was not, whether Plaintiffs were "substantially justified" in rejecting the offer.  20 U.S.C. § 1415(i)(3).

As an initial matter, Plaintiffs refute the District's assertion and claim that the relief they received from the hearing officer was "clearly" greater than what the District offered them.  (R. 21, Pls.' Mem. of L. In Support of Their Mot. for Summ. J. at 12.)  The Court disagrees.  In its July 23, 2009 Offer of Settlement, the District offered to provide Brianna with several significant types of relief, each of which the hearing officer denied: (1) ten (10) sixty-minute, one-on-one math tutoring sessions outside the regular school day; (2) a revised IEP to provide at least 240 mpw of special education instruction in math; and (3) a revised IEP to include a goal to address Brianna's organizational needs.  In addition, the District offered to consider Plaintiffs' consultants' evaluations in revising Brianna's IEP, adopting any recommendations the IEP team deemed appropriate and necessary to meet Brianna's educational needs.  The hearing officer ordered substantially similar relief.[4]

---

[4]  The Court characterizes the relief as 'substantially similar' because the hearing officer's Order notes, for clarity, that "[b]y ordering the [IEP] team to 'take into account' recommendations by Parent's consultants, I am merely instructing the team to consider whether any of the recommendations may be appropriate for [Brianna].  I am not directing the team to adopt the consultant's recommendations."  (ISBE Order at A-18, n.12.)

Plaintiffs did obtain some relief from the hearing officer that was more favorable than the District's Offer. Whereas the District offered to reimburse Plaintiffs up to $300.00 for Dr. Marsden-Johnson's AT evaluation, the hearing officer ordered a $425.00 reimbursement. While the District offered to provide AT training to Brianna's mother and teachers, the hearing officer ordered this relief, plus a minimum of 20 mpw of AT support for Brianna. The hearing officer granted Plaintiffs permission to invite two of their consultants to attend the IEP meeting, with the attendance fees paid by the District. The District did not contemplate this in its Offer. Finally, the hearing officer ordered the District to allow Dr. Marsden-Johnson to conduct a follow-up classroom observation of Brianna, with her time paid for by the District.

Upon careful consideration of the settlement offer that Plaintiffs rejected and the relief they ultimately obtained from the hearing officer, the Court finds that the Offer of Settlement provided more favorable relief to the Plaintiffs. The next inquiry, therefore, is whether Plaintiffs were "substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E). In light of the reasons stated in Plaintiffs' July 26, 2009 response to the District's settlement offer, *see* R. 18-5, as well as the ISBE hearing officer's Findings of Fact and Conclusions of Law, the Court finds that Plaintiffs were substantially justified in rejecting the Offer.

Plaintiffs and the hearing officer both described the District as having essentially ignored Plaintiffs following their November 2008 filing of the due process hearing petition. As Plaintiffs wrote in their response to the District's July 23, 2009 settlement offer, "We requested via numerous emails a date for an IEP meeting and did not receive any response. The hearing officer clearly stated that the district could convene an IEP meeting before the hearing ... The district did not contact the parent for an IEP meeting." (R. 18, Ex. E at 1.) Those allegations

seemed to form the basis for the hearing officer's *sua sponte* ruling that the District violated

Brianna's right to a FAPE.  (R. 23-1, Ex. A at 15.)  As the hearing officer states,

> [Brianna's mother] filed her due process complaint around the time of the November 21st
> meeting and CPS assigned legal counsel to the case shortly thereafter.  It is an
> unfortunate irony that CPS stopped responding to the Parent once its legal counsel got
> involved.  Specifically, Mr. Hermann canceled the December 17 meeting because he
> could not attend and, thereafter, failed to respond to the Parent's plea to reschedule the
> IEP meeting.  The parties did participate in an unsuccessful resolution conference on
> January 27, 2009.  The record indicates, however, that counsel for the Parent made
> additional requests to hold an IEP meeting after the resolution conference, but Mr.
> Hermann again failed to schedule a meeting.  Indeed, from the evidence presented at the
> hearing it appeared that Mr. Hermann simply ignored the Parent's requests to meet.

*Id.*  Given the District's failure to respond or take action, Plaintiffs justifiably had concerns about

the District's Offer.  Additionally, Plaintiffs expressed concern that the District's offer was "too

vague" and, as a result, would "likely be litigated again."  (R. 18, Ex. E at 1.)[5]  For all of these

reasons, the Court finds that Plaintiffs were substantially justified in rejecting the District's

Offer.  Therefore, despite the Court's finding that the relief Plaintiffs ultimately obtained was

less favorable than the relief that the District offered them, Plaintiffs' rejection of the settlement

offer was "substantially justified" and the attorney's fees incurred after July 23, 2009 are not

barred under 20 U.S.C. § 1415(i)(3)(D)(i).

### III.     Reasonable Attorney's Fees

The IDEA contains a "fee-shifting provision that permits an award of attorneys' fees to a

prevailing party," which states "[i]n any action or proceeding brought under this section, the

court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of

a child with a disability who is the prevailing party."  *Linda T.,* 417 F.3d at 707; *see also* 20

---

[5] It is worth noting that despite Plaintiffs' response, they did not close off the possibility
of settling.  *See id.*

U.S.C. § 1415(i)(3)(B).  Federal district courts have considerable discretion in awarding attorney's fees.  *See Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010); *see also Hensley*, 461 U.S. at 437.  The Seventh Circuit has adopted the three-part test articulated by Justice O'Connor in her concurring opinion in *Farrar* in the IDEA context to determine whether the prevailing party is entitled to fees.  *See, e.g., Monticello Sch. Dist. No. 25*, 102 F.3d at 907 (finding that the three-part test provides guidance in the IDEA context); *Koswenda*, 227 F.Supp.2d at 990-96 (applying three-part test); *Petrovich v. Consol. High Sch. Dist. No. 230*, 959 F. Supp. 884, 891-93 (N.D. Ill. 1997) (same).  In determining the amount of fees to award, the Court considers: (1) the difference between the relief sought and the amount recovered; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation.  *Monticello Sch. Dist. No. 25*, 102 F.3d at 807.  The Supreme Court has said that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Linda T.,* 417 F.3d at 708 (quoting *Hensley*, 461 U.S. at 436); *see also Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir.1997) (the first factor is the most important and the second factor is the least important).

As discussed *supra*, the Court rejects the District's argument that Plaintiffs are not the prevailing party.  In the alternative, the District argues that Plaintiffs' fee petition is unreasonable,[6] and that the Court should: (1) reduce the amount Plaintiffs receive by 60% to reflect the degree of success they obtained, and (2) deduct an additional sum of $7,000.00 which

---

[6] The District does not dispute the hourly rates charged by Plaintiffs' counsel. The Court finds their rates in-line with what other courts in this District have accepted.  *See Nicole M. v. Bd. of Educ.*, No. 09 C 3010, 2010 WL 186701 (N.D. Ill. Jan. 14, 2010); *see also John M. v. Bd. of Educ.*, 612 F. Supp. 2d 981 (N.D. Ill. 2009); *Benito M. v. Bd. of Educ.*, 544 F. Supp. 2d 713 (N.D. Ill. 2008).

represents the attorneys' inefficient distribution of responsibilities and duplication of work.[7]  In

recognition of the fact that they did not prevail on some issues, Plaintiffs propose a reduction in

fees not to exceed 25%.  (R. 29, Pls.' Reply at 2.)    The Court addresses the District's arguments

in turn.

A.      **Degree of Success**

The District argues that "Plaintiffs' fee petition is not reasonable in relationship to their

degree of success, [and] it should be significantly reduced."  (R. 17, Def.'s Mem. in Supp. of

Mot. at 7.)  Although "'the degree of the plaintiff's success does not affect eligibility for a fee

award,'" "the plaintiff's degree of success does impact the reasonableness of a fee award, and

'[i]n some circumstances, even a plaintiff who formally prevails . . . should receive no attorney's

fees at all.'"  *Monticello Sch. Dist. No. 25*, 102 F.3d at 907 (citing *Farrar*, 506 U.S. at 114-15,

113 S. Ct. at 574-75) (internal quotations omitted) (emphasis in original omitted).  The Supreme

Court has explained that

> [w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his
> successful claims, the hours spent on the unsuccessful claim should be excluded in
> considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a
> plaintiff who has won substantial relief should not have his attorney's fee reduced simply
> because the district court did not adopt each contention raised.  But where the plaintiff
> achieved only limited success, the district court should award only that amount of fees
> that is reasonable in relation to the results obtained.

*Hensley*, 461 U.S. at 440, 103 S. Ct. at 1943.

---

[7]  The District also asks the Court to deny Plaintiffs' request for $422.85 in photocopying
costs because Plaintiffs' claim for the costs does not provide sufficient detail to demonstrate that
the photocopies were reasonably necessary for the due process hearing.  *See Am. Auto.
Accessories, Inc. v. Fishman*, 991 F. Supp. 995, 997 (N.D. Ill. 1998).  In their Response,
Plaintiffs submitted an itemization of their photocopying costs.  (R. 27-1, Pls.' Resp., Ex. A.)
Upon reviewing Plaintiffs' submission, the Court finds the photocopying costs are recoverable
because they were reasonably necessary for the due process hearing.

In this case, Plaintiffs did not achieve complete success on the claims they asserted at the due process hearing. The hearing officer's Order requires the District to revise Brianna's IEP, to reimburse Plaintiffs for the cost of Dr. Marsden-Johnson's AT evaluation, to invite two of Plaintiffs' consultants to participate in the development of Brianna's revised IEP, and to pay the cost of having Dr. Marsden-Johnson conduct a classroom observation of Brianna. The hearing officer, however, denied Plaintiffs' requests for reimbursement for two other privately-engaged consultants, for the provision of one-on-one math tutoring outside the classroom for Brianna, for 200 mpw of supplemental math instruction for Brianna, and to order the District to implement the findings of Plaintiffs' privately-engaged consultants in the IEP revision. Furthermore, the hearing officer denied all of Plaintiffs' requests for a finding that the District violated Brianna's right to a FAPE, and made one FAPE denial *sua sponte*, relating to the District's failure to engage with Brianna's mother following the filing of her petition for a due process hearing.

The Seventh Circuit has upheld a district court's reduction of attorney's fees when the plaintiff has achieved limited success. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 598 (7th Cir.1999). There is no bright-line rule governing the amount a court should reduce an award for attorney's fees. *See, e.g. Jay C. v. Bd. of Educ. of the City of Chicago, Dist. 299*, No. 09 C 3882, 2010 WL 3596175, at *4 (N.D. Ill. Oct. 30, 2009) (finding a 50% fee reduction "appropriate and reasonable to reflect Mona's partial success at the hearing"); *John M. v. Bd. of Educ. of the City of Chicago, Dist. 299*, 612 F. Supp. 2d 981, 999 (N.D. Ill. 2009) (adopting plaintiffs' proposed 15% reduction); *Benito M. v. Bd. of Educ. of the City of Chicago, Dist. 299*, 544 F. Supp. 2d 713, 721 (N.D. Ill. 2008) (reducing award by 15%); *Max M. v. Illinois St. Bd. of Educ.*, 684 F. Supp. 514, 531 (N.D. Ill. 1988) (reducing award by 50%). Based on the Court's

consideration of Plaintiffs' degree of success at their due process hearing – and taking into account Plaintiffs' request that the Court reduce the fee award by not more than 25%, and the District's request that the Court reduce the fee award by 60% – the Court finds a reduction of 40% reasonable and appropriate.

## B.    Additional $7,000.00 Deduction for "Unreasonable and Excessive Charges"

"[T]he fee applicant bears the burden of establishing entitlement to an award." *Hensley*, 461 U.S. at 437.  Here, the District asserts that the Court should reduce Plaintiffs' attorneys' fee award by $7,000.00 for their failure to meet this burden.  The District does not explain how it arrived at the $7,000.00 figure.  Instead, the District asserts that the reduction accounts for: (1) fees the District contends are non-recoverable, related to implementation, monitoring, and enforcement of the hearing officer's Order, and (2) redundancies and duplications in counsel's billing, reflecting a failure to appropriately distribute work responsibilities.

### 1.    Fees related to post-hearing monitoring and enforcement

The District argues, without citing any case law, that these post-Order fees are not recoverable.[8]  Courts in this District, however, have awarded attorney's fees for "useful post-judgment work that is intertwined with the underlying claims and is of a type ordinarily necessary to secure the result obtained in the underlying action." *Christopher C. v. Bd. of Educ. of the City of Chicago, Dist. 299*, No. 10 C 821, 2010 WL 3420266, at *3 (N.D. Ill. Aug. 26, 2010) (citations omitted) (awarding attorney's fees related to post-hearing enforcement of an IDEA hearing); *see also Stephanie J. v. Bd. of Educ. of the City of Chicago, Dist. 299*, No. 10 C

---

[8] Instead, the District cites an inapposite statute from the Illinois Administrative Code that sets forth the ISBE's responsibilities after the hearing officer has issued an order.  *See* R. 28, Def.'s Reply at 3-4.

1359, 2010 WL 3070461, at *2 (N.D. Ill. July 30, 2010) (post-hearing work that is intertwined with the due process hearing is compensable).

Following the hearing officer's August 26, 2009 Order, Plaintiffs' attorney Sara Mauk ("Ms. Mauk") billed 33.37 hours, for which she seeks $8,008.80.  (Def.'s Stmt. Facts, ¶ 23.) Over that same time period, Ms. Aguilar billed 12.3 hours for which she seeks $2,275.00.  (*Id.*) Plaintiffs defend these charges as "required to ensure compliance with [the hearing officer's] decision," and further assert that "[t]he hearing officer ordered extensive relief, within a specific time frame [], and CPS failed to comply in several significant respects."  (R. 26, Pls.' Mem. of L. in Opp. to Def.'s Mot., at 10.)  Plaintiffs submit several protracted email correspondences with the District, and three formal findings of non-compliance by the ISBE, to support their contention that their continued involvement was reasonable and necessary in light of the District's (in)action and delays.  *See* R. 23-2, Pls.' Stmt. Facts, Ex. G (Sept.-Oct. 2009 email correspondence demonstrating Plaintiffs' repeated attempts to set an IEP meeting date that went virtually ignored); *id.*, Ex. H (Nov. 4, 2009 ISBE letter to District re: non-compliance with the hearing officer's Order); *id.*, Ex. I (Nov. 13, 2009 ISBE letter to District re: continued non-compliance); *id.*, Ex. J (Nov. 17, 2009 ISBE letter to District re: continued non-compliance). The Court finds that Plaintiffs' counsel's post-hearing enforcement activities were reasonable and necessary to ensure that their clients received the relief they were awarded.

### 2. Redundancies, duplication, and failure to appropriately distribute work responsibilities

The District further argues that Plaintiffs' counsel "did not split the work responsibilities," duplicated each other's work efforts, and inappropriately billed their clients for reviewing each others', and the client's, emails.  (R. 17, Def.'s Mem. at 10.)  Plaintiffs refute the

District's allegations, and describe the division of responsibilities between co-counsel in an affidavit submitted by lead attorney Ms. Mauk:

> ¶6. During the preparation for the due process hearing, I and my co-counsel consulted extensively with our client . . .

> ¶7. I assigned my co-counsel Ms. Aguilar to be the primary contact for the parent during other periods, including implementation of the due process decision. I consulted periodically with Ms. Aguilar and, as necessary, directly with the parent.

(R. 27-1, Pls.' Resp., Ex. A.) A careful review the fee petition, however, suggests that the attorneys' division of labor does not quite match Ms. Mauk's description. The overwhelming majority of entries in Ms. Aguilar's bill are for reviewing emails. Indeed, a quick calculation reveals that approximately 50% of Ms. Aguilar's work was spent reviewing – not drafting, or responding to – emails. The remaining 50% of Ms. Aguilar's work breaks down as follows: an initial 2.5 hour meeting with Plaintiffs; 8.25 hours of pre-hearing work; and 39.45 hours of work devoted to the August 3-5, 2009 due process hearing (25.75 of which were spent attending the hearing). Ms. Aguilar's bill does not support Ms. Mauk's assertion that she was the "primary contact" with Plaintiffs. Nor does Ms. Mauk's bill wholly support this conclusion. Nevertheless, the Court finds it credible that Ms. Aguilar's work leading up to the due process hearing – albeit primarily email review – was important to her preparation for and involvement in that hearing, which entailed preparing witness examinations.

The Court does not, however, find that Ms. Aguilar's post-hearing activities – comprised strictly of reviewing emails – are compensable. She produced no work product, was not involved in the fee petition litigation, and has not provided any evidence that she was working "toward" something. From an award of attorneys' fees, the court may deduct time that it

believes is unnecessary, duplicative, or redundant.  *See, e.g., Benito*, 544 F. Supp. 2d at 720.

Because Plaintiffs have not met their burden of showing reasonableness for these billings,

*Hensley*, 461 U.S. at 437, the Court deducts these hours as redundant, and reduces the fee

request by $2,275.00.

## IV.     Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on the Court's attorneys' fees award.

"[P]rejudgment interest is presumptively available to victims of federal law violations."

*McRoberts Software, Inc. v. Media 100, Inc.,* 329 F.3d 557, 572 (7th Cir. 2003).  "The basic

purpose of prejudgment interest is to put a party in the position it would have been in had it been

paid immediately.  It is designed to ensure that a party is fully compensated for its loss." *Am.

Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc*., 325 F.3d

924, 935 (7th Cir. 2003); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515

U.S. 189, 195, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) ("The essential rationale for awarding

prejudgment interest is to ensure that an injured party is fully compensated for its loss.").  In

short, "prejudgment interest should not be thought of as a windfall," instead, "it is simply an

ingredient of full compensation that corrects judgments for the time value of money."  *Matter of

P.A. Bergner & Co.,* 140 F.3d 1111, 1123 (7th Cir. 1998).

Here, Plaintiffs are seeking prejudgment interest on the attorneys' fees award to

compensate counsel for the delay in the payment of their fees.  Although the parties do not cite –

nor has the Court found – any controlling legal authority regarding prejudgment interest awards

in the context of IDEA attorney's fees claims, other courts have concluded that prejudgment

interest is appropriate in such cases subject to the court's discretion.  *See, e.g., Termine v.

*William S. Hart Union High Sch. Dist.,* 288 Fed.Appx. 360, 363 (9th Cir. July 24, 2008) (unpublished); *Kaseman v. District of Columbia,* 329 F. Supp. 2d 20, 28 (D.D.C. 2004); *see also Holbrook v. District of Columbia,* 305 F. Supp. 2d 41, 46 (D.D.C. 2004) ("The phrase 'any money judgment' in [28 U.S.C.] § 1961(a) includes a judgment awarding attorney's fees and other costs."). The District's argument that prejudgment interest is not warranted because there is no evidence that it acted in bad faith or unreasonably delayed the fee payment is inapposite. The purpose of prejudgment interest is "to put the party in the position it would have been in had it been paid immediately." *Am. Nat'l Fire Ins. Co.*, 325 F.3d at 935. The District's intent does not affect the availability of prejudgment interest. *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999).

Based on the presumption in favor of prejudgment interest and the facts in this matter, *see McRoberts Software,* 329 F.3d at 572, the Court, in its discretion, awards Plaintiffs prejudgment interest on the attorneys' fees award to compensate counsel for the delay in payment. Because there is no statutory interest rate, the Court awards prejudgment interest based on the average prime rate for the appropriate time period.[9] *See First Nat'l Bank,* 172 F.3d at 480 ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest.").

---

[9] The prime rate from February 2010 through October 2010 has been 3.25 percent. http://www.federalreserve.gov/releases/h15/data/Monthly/H15_PRIME_NA.txt.

**V.     Statute of Limitations**

As a final matter, the Court addresses the District's statute of limitations affirmative defense.  While the District did not raise this in any of its pleadings relating to the present summary judgment proceeding, for the sake of completeness and finality, the Court assesses the District's defense and finds that it fails.  Plaintiffs filed the underlying lawsuit on April 7, 2010.  ISBE issued its Order on August 26, 2009.  The Seventh Circuit has held that a prevailing party must make a fee claim within 120 days after the hearing officer's order becomes final.  *Dell v. Bd. of Educ., Twp. High Sch. Dist.*, 32 F.3d 1053, 1058-59 (7th Cir. 1994).  When, as here, the school district does not challenge the hearing officer's decision, the decision becomes final when the time for the district to challenge it has run – 120 days after the decision.  *Id*. at 1063.  Therefore, Plaintiffs had 240 days after the hearing officer's decision to file their attorneys' fees lawsuit.  Plaintiffs filed their lawsuit within that time frame.  *See Stephanie J. v. Bd. of Educ. of the City of Chicago, Dist. 299*, No. 10 C 1359, 2010 WL 3070461, at *2 (N.D. Ill. July 30, 2010) (petition filed 204 days after hearing officer's decision deemed timely).

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part the parties'
motions for summary judgment. Plaintiffs are entitled to recover a total of $31,491.60 in
attorney's fees and expenses (60% of the $56,277.66 requested, less $2,275.00 the Court has
deducted), plus prejudgment interest of 3.25% from February 22, 2010 through November 8,
2010.

**Date:** November 8, 2010

ENTERED

_____
**AMY J. STUEVE**
**United States District Court Judge**